United States District Court
Southern District of Texas
**ENTERED**
February 11, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL COLE, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-01630 |
| | § | |
| C.R. BARD, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is a Motion to Dismiss, Motion to Strike, and Motion for More Definite Statement ("Motion to Dismiss") filed by Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. *See* Dkt. 13. Having reviewed the briefing, the Complaint, and the applicable law, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The inferior vena cava ("IVC") is a large vein that carries deoxygenated blood from the lower body to the right atrium of the heart. When the right atrium contracts, blood is pumped into the lungs through the pulmonary arteries where carbon dioxide is exchanged for oxygen before the blood returns to the heart's left atrium for redistribution throughout the body. For some people, this vital life process is threatened by the development of blood clots in the body's lower limbs that travel through the IVC to the person's heart and lungs.

Those patients who are at increased risk for developing blood clots are often treated with a regimen of anticoagulants (that is, blood thinners). For those patients for whom anticoagulants are ineffective or dangerous, an IVC filter is an important therapeutic option. These filters are surgically implanted into the IVC and are designed to prevent blood clots from proceeding to the heart and lungs. At first, the filters were designed to be permanent. By the early 2000s, medical device manufacturers began to develop filters that could be implanted and then later retrieved after the patient's risk of developing blood clots had dissipated. The allegations that follow are set forth in the operative complaint and told in the light most favorable to the plaintiff.

On January 18, 2019, Plaintiff Michael Cole ("Cole") underwent surgical placement of a Denali Filter System ("Denali Filter") "designed, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold by Defendants" C.R. Bard, Inc. and its subsidiary, Bard Peripheral Vascular, Inc. (collectively, "Bard"). Dkt. 1 at 32. Three months after the retrievable filter was implanted, Cole was under the knife again. The Denali Filter had failed, and blood clots were traveling freely once again through Cole's IVC. Medical imaging showed that the Denali Filter had tilted and fractured. One piece of the Denali Filter had broken off and was swept away through Cole's heart to his lungs. It remains there to this day, lodged in the right lower lobe of Cole's pulmonary artery.

Cole filed suit against Bard on May 8, 2020, asserting eight causes of action for the injuries he allegedly sustained as a result of the Denali Filter's failure. Cole's

causes of action are (1) negligence; (2) strict products liability—failure to warn; (3) strict products liability—design defect; (4) strict products liability—manufacturing defect; (5) breach of express warranty; (6) breach of implied warranty; (7) fraudulent misrepresentation; and (8) negligent misrepresentation.

In its Motion to Dismiss, Bard seeks to dismiss counts three, five, six, seven, and eight under Federal Rule of Civil Procedure 12(b)(6). Bard has also moved to dismiss Cole's request for punitive damages under Rule 12(b)(6). Counts one, two, and four are not disputed for purposes of the pending motion. Separately, the Motion to Dismiss includes requests for relief under Rule 12(e) (motion for a more definite statement) and Rule 12(f) (motion to strike immaterial and prejudicial allegations).

## RULE 12(b)(6) MOTION TO DISMISS

To obtain relief from a federal court, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Failure to comply with this pleading requirement can result in an early dismissal of the entire lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion tests the formal sufficiency of the plaintiff's complaint but should not be used to resolve factual issues or the merits of the case. *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (noting that it is the responsibility of the district court at the Rule 12(b)(6) stage to decide "whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success").

On a Rule 12(b)(6) motion, the plaintiff's complaint is viewed in the light most favorable to the plaintiff, and all well-pleaded facts are accepted as true. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

In the analysis that follows, I recommend that Bard's Motion to Dismiss be granted in part and denied in part. Specifically, I recommend that Cole's claims for strict products liability—design defect, breach of express and implied warranty, and fraudulent and negligent misrepresentation be dismissed under Rule 12(b)(6). Cole's request for punitive damages should survive the pending motion.

## A.   STRICT PRODUCTS LIABILITY—DESIGN DEFECT

To prevail on a design defect claim, Cole must show that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d

306, 311 (Tex. 2009). Bard argues that Cole's design defect claim should be dismissed because his Complaint fails to sufficiently allege a safer alternative design.

A safer alternative design is a design that was economically and technologically feasible to implement and would have prevented or significantly reduced the risk of injury to the plaintiff without impairing the product's utility. *See* TEX. CIV. PRAC. & REM. CODE § 82.005(b). Motions to dismiss a design defect claim should be granted when the plaintiff fails to allege that a safer alternative design exists. *See Carlton v. Olympus Corp. of the Americas*, No. 1:18-cv-00026-LY, 2019 WL 6037322, at *7 (W.D. Tex. July 26, 2019) ("Even at the motion to dismiss stage, a safer alternative design is a necessary component to a design defect claim." (quotation omitted)). Bare assertions that a safer alternative design reportedly exists will not suffice. *See Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 70 (D. Mass. 2000) ("Although the plaintiff states, in the sort of conclusory fashion that is insufficient, that safer alternative designs for cigarettes were available, there is not the slightest description of what those designs were or why they would have avoided causing harm to the plaintiff if adopted." (cleaned up)).

Cole does not dispute that he must allege a safer alternative design to proceed with his design defect claim. Instead, he argues that six paragraphs of the Complaint provide enough factual support to raise an inference that there are both safer designs in existence and reasonable treatment alternatives. *See* Dkt. 14 at 13

(citing Dkt. 1 ¶¶ 16, 20–21, 30, 74, and 232). Right off the bat, Cole's reasonable treatment alternative argument fails. As Bard points out in reply, the availability of alternative treatments is not equivalent to a safer alternative design for the underlying product. *See Brockert v. Wyeth Pharm., Inc.*, 287 S.W.3d 760, 770 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("a safer alternative design must be one for the product at issue"). Any suggestion that Cole's physician could have treated Cole's clotting issues with anticoagulants or recommended and implanted a permanent IVC filter rather than a retrievable one (like the Denali Filter) says nothing about whether Bard's Denali Filter is defectively designed. *See Theriot v. Danek Med., Inc.*, 168 F.3d 253, 255 (5th Cir. 1999) (applying Louisiana law) ("The problem with this argument is that it really takes issue with the choice of treatment made by Theriot's physician, not with a specific fault of the pedicle screw sold by Danek."); *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 766 (W.D. Tex. 2020) ("[U]nder Texas law and within this Circuit, a plaintiff cannot prove design defect by claiming that defendant should have sold an entirely different product." (quotation omitted)). I turn now to whether Cole has sufficiently alleged a safer alternative design.

Notably absent from the Complaint are any specific factual allegations describing the purported safer alternative design. The Complaint cursorily states that "safer and more efficacious designs exist for this product." Dkt. 1 at 18. But what is the safer alternative design? Of what material is it made? How is the supposedly safer alternative design different in any significant respects from the

Denali Filter? The Complaint answers none of these questions. To survive the Rule 12(b)(6) motion, Cole must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Merely using the buzz word "safer" once or twice in the Complaint is not sufficient, for Rule 12(b)(6) purposes, to support a conclusion that an alternative design was, in fact, safer. *See Castillo v. Bos. Sci. Corp.*, No. 7:20-CV-123, 2020 WL 5608510, at *5 (S.D. Tex. Sept. 18, 2020) (dismissing design defect claims because plaintiff's allegations were "conclusory and [did] not actually identify any safer design or product"); *Barragan v. Gen. Motors, LLC*, No. SA-15-cv-854-DAE, 2016 WL 3519675, at *6 (W.D. Tex. June 22, 2016) (dismissing design defect claims because plaintiff failed to "plead with any degree of specificity the existence of a safer alternative design"). In this case, the Complaint's allegations do not go beyond conclusory statements.

Without any detailed, supporting allegations, Cole casually claims that the Denali Filter's predicate device, the SNF, was a safer and more effective alternative filtering device. I find this argument unconvincing. To understand what a predicate device is, it is helpful to know that the FDA provides different pathways to market for medical devices depending on how the device is classified. *See* 21 U.S.C. § 360c(a). Bard's Denali Filter reached the market by way of 510(k) clearance. *See* Dkt. 1 at 17. Clearance under 510(k) is important to manufacturers and consumers because it means that the device can be marketed and sold without the time and expense associated with FDA pre-market approval. *See* 21 U.S.C. § 360c(a)(1)(B)–

(C). To avoid the rigors of pre-market approval and gain 510(k) clearance, the manufacturer must establish that the device in question is "substantially equivalent" to a device already on the market (that is, the predicate device). *See id.* § 360c(f). A manufacturer can establish substantial equivalence to a predicate device in two ways: (1) by showing that the device has the same intended use and technological characteristics as a predicate device or (2) by showing that the device has the same intended use and, while technologically different, the manufacturer has provided clinical or scientific data "that demonstrates that the device is as safe and effective as" the predicate device. *Id.* § 360c(i)(1)(A).

Cole argues that the Denali Filter made its way to market based on its substantial equivalence to the SNF device. Substantial equivalence means the two devices have the same intended use. Therefore, Cole posits, the SNF presents an economically and technologically feasible alternative design because the Denali Filter has been allegedly causing injuries to people where the SNF has not. But that's not enough. Cole has not alleged that the Denali Filter and SNF have different designs, and he cannot allege that Bard should have sold the SNF rather than the Denali Filter. *See Brockert*, 287 S.W.3d at 770 ("The Texas Supreme Court has held that a plaintiff cannot prove design defect by claiming that defendant should have sold an entirely different product."). Finally, Cole has not alleged how using SNF's design, or some other design, "would have prevented or significantly reduced the risk" of his injury. TEX. CIV. PRAC. & REM. CODE § 82.005(b)(1).

Because Cole has not alleged that a safer alternative design to the Denali Filter exists, his design defect claim fails as a matter of law. Bard's motion to dismiss this claim should be granted.[1]

## B.   BREACH OF EXPRESS AND IMPLIED WARRANTIES

Cole alleges that Bard breached express and implied warranties that the Denali Filter was safe and effective, of merchantable quality, and fit for its intended use. Bard has moved to dismiss these claims based on Cole's failure to notify Bard of his claims before filing this suit, as required by Texas law. Bard also argues that Cole has failed to plead facts showing privity of contract between the parties. Because I find the notice argument dispositive, I do not address the privity issue.

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." TEX. BUS. & COM. CODE § 2.313(a). Contracts for the sale of goods also include implied warranties that the product is merchantable, and, where the seller has reason to know of the buyer's particular purposes, that the product is fit for the

---

[1] At the end of his response brief, Cole asks for an opportunity to amend his Complaint in the event any of his claims are insufficiently pled. In making this request, Cole overlooks the fact that he has already been given two opportunities to amend, and he declined the invitation to do so both times. Before the Motion to Dismiss was filed, the District Court held a pre-motion conference at which time Bard was required to outline the reasons it thought the Complaint should be dismissed. At that hearing, Cole's counsel was asked if her client wanted to amend the Complaint to cure any alleged deficiencies. She said no. Then, after the Motion to Dismiss was filed, I put into place a scheduling order, which expressly gave Cole another opportunity to file an amended pleading. Once again, he did not do so. There comes a point when a district court has to say, "enough is enough." That time is now. *See Hermann Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (finding plaintiffs need not be afforded another opportunity to amend their complaint where they had already been given two opportunities to amend).

buyer's intended use of the product. *See id.* §§ 2.314–2.315. Before filing suit for breach of either of these warranties, Texas law requires the buyer to notify the seller of defects in the goods. *See id.* § 2.607(c)(1); *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970 (S.D. Tex. 2016) (compiling cases). The required pre-suit notice "informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation" without the need for litigation. *See* § 2.607 cmt. 4.

Cole does not dispute that he failed to notify Bard of his claims prior to filing this lawsuit. Instead, Cole argues that "the facts pled in the Complaint give rise to a reasonable inference that Bard received notice of Mr. Cole's Denali Filter failure within ten work days of Mr. Cole's surgery to remove the device." Dkt. 14 at 10–11. To support his argument, Cole cites federal regulations that require hospitals to notify device manufacturers of any serious injuries caused by their devices. *See id.* at 11 (citing 21 C.F.R. § 803.30). Cole's position appears to be that, under federal law, the hospital that removed Cole's Denali Filter *should have* notified Bard that his Denali Filter had failed and may have caused serious injury to Cole. Cole's argument does not make the grade.

Nowhere in the Complaint is there any allegation that the hospital complied with its alleged notice obligations. There is not even an allegation that Cole's injury is one that should have triggered the hospital's obligation. I'm not willing to take a leap of faith and find that Bard received notice from the hospital. Even if I did, I'd fall into plain error because notice that Bard may have received from a third party,

like a hospital, does not satisfy Cole's pre-suit notice obligation under Texas law. *See Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 806 (S.D. Tex. 2019) ("[T]he statute expressly requires Plaintiff, not the FDA [or some other third party], to provide pre-suit notice."); *McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d 898, 913 (W.D. Tex. 2013) ("Consequently, a generic notice that [Defendant] might have had regarding problems with [the product] generally does not suffice under Texas law. Instead, the notice must have alerted [Defendant] to a particular buyer/end user, namely [Plaintiff], who was having problems with its products." (cleaned up)). In other words, if Bard did receive notice from the hospital that Cole's Denali Filter may have failed and caused serious injury, it would not satisfy Cole's legal obligation to notify Bard that he intended to file a lawsuit against Bard for breach of warranty. Likewise, Bard's involvement in multi-district litigation concerning the same product does not satisfy Cole's burden of notifying Bard that his Denali Filter had failed and that he intended to file a lawsuit. *See McKay*, 934 F. Supp. 2d at 914 (holding that filing of a class action lawsuit failed to satisfy the pre-suit notice requirement).

The pre-suit notice requirement is intended to allow the parties to settle their warranty disputes amicably before proceeding with adversarial litigation. It is a condition precedent to filing suit. *See id.*; *Martin v. Home Depot USA, Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005). Because Cole skipped this necessary step, his claims for breach of implied and express warranty must be dismissed.

## C. FRAUDULENT AND NEGLIGENT MISREPRESENTATION

Bard has moved to dismiss Cole's fraudulent and negligent misrepresentation claims for failure to meet the heightened pleading standard required by Rule 9(b). Cole does not dispute the application of Rule 9(b) to either of those claims. Instead, Cole argues that his Complaint meets Rule 9(b)'s requirements and, if not, that the facts necessary to plead fraud with specificity are, nonetheless, within Bard's knowledge and control.

The Federal Rules of Civil Procedure require parties claiming fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The allegations must include "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted). Although not specifically mentioned in Rule 9(b), the Fifth Circuit has held that Rule 9(b)'s heightened pleading standard applies to claims of negligent misrepresentation. *See id*. Failure to plead those claims subject to Rule 9(b) with specificity can result in dismissal under Rule 12(b)(6) for failure to state a claim. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted."). As one court has explained:

> The rule has three purposes. First, it ensures that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and

> defense. Second, it eliminates those complaints filed as a pretext for discovery of unknown wrongs. The Second Circuit explained: "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972). A plaintiff in a non-9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 250 (W.D. Tex. 1979) (cleaned up). "The Fifth Circuit applies Rule 9(b) to fraud complaints with bite and without apology, while recognizing that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 456 (S.D. Tex. 2016) (cleaned up). Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* (quotation omitted).

Bard challenges Cole's fraudulent and negligent misrepresentation claims on the grounds that the allegations fail to satisfy Rule 9(b)'s pleading requirement. Specifically, Bard argues that the Complaint fails to identify who made the misrepresentations, what representations were made, when they were made, where they were made, and how they reached Cole or his physician. I agree.

Cole alleges in conclusory fashion that Bard was "aware and had knowledge of the fact that the Denali Filter System was defective and unreasonably dangerous." Dkt. 1 at 22. According to Cole, published data contradicted the

representations Bard made to physicians, healthcare professionals, and other members of the medical community. *See id.* Despite this data, Cole alleges that Bard "fraudulently misrepresented and published information in various forms of media (including but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality[,] and effectiveness." *Id.* at 45. These, Cole's most specific allegations, fail to satisfy the heightened pleading requirements of Rule 9(b). *See Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, 611 (S.D. Tex. 2015) (dismissing fraudulent misrepresentation claim because the plaintiff failed to "identify the speaker [or] state[] when and where the statements were made," even though the plaintiff submitted published medical literature and an affidavit from her physician stating that he used the device based on the manufacturer's representations); *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 464 (S.D.N.Y. 2015) (dismissing fraudulent misrepresentation claim because the complaint made only "general allegations about false and fraudulent representations regarding the safety [and efficacy of the product], but fail[ed] to identify specific fraudulent statements, the particular speaker(s), or the place and date of any such statements").

With his Complaint stripped down to the studs, Cole argues that Rule 9(b)'s pleading requirement "is relaxed when the facts pleaded in a complaint are peculiarly within the opposing party's knowledge." *See* Dkt. 14 at 8 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)). Cole's authority is off target. The Fifth Circuit in *Tuchman* was discussing "the second sentence of

Rule 9(b) [which] relaxes the particularity requirement for conditions of the mind, such as scienter: 'Malice, intent, knowledge, and other condition of [a person's mind] may be [alleged] generally.'" *Id.* at 1068 (quoting FED. R. CIV. P. 9(b)). While I agree with Cole that he need not demonstrate Bard's knowledge or intent with specific factual allegations, *Tuchman* does not help him clear Rule 9(b)'s pleading hurdle because, by failing to describe the who, what, when, and where, Cole has not even left the ground.

Cole next argues that he need not strictly comply with Rule 9(b)'s pleading requirements because Bard has exclusive control over the information he needs to flesh out his claim. In other words, Cole wants the Court to lower the pleading standard so that he can proceed to discovery and obtain information upon which to build his fraudulent misrepresentation claim. I decline the invitation. Actual, justifiable reliance on the alleged fraudulent misrepresentation is a necessary element to a fraudulent misrepresentation claim in the State of Texas. *See McReynolds v. Barrett Daffin Frappier Turner & Engel, LLP*, No. 4:12-cv-01418, 2013 WL 754240, at \*3 (S.D. Tex. Feb. 27, 2013); *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, No. H-04-2220, 2007 WL 3145788, at \*12 (S.D. Tex. Oct. 25, 2007). Cole has not pointed to a single representation from Bard that made its way to him or his physician. He has no chance of showing reliance on statements that never made it to him.

Cole mentions for the first time in his response that Bard conducted sales campaigns in Pasadena, Texas, and promoted the Denali Filter "to the medical

community and general public in Pasadena." Dkt. 14 at 10. Leaving aside the fact that such allegations are nowhere to be found in the Complaint, it does not matter what Bard did or said to anyone else in the world. The question is whether Bard's representations made it to Cole or his doctor, and if so: when, where, and how. Cole's Complaint does not provide this information. Discovery will not help him. How is Bard supposed to produce documents to help Cole pursue his fraudulent misrepresentation claim if Cole hasn't even described what representations he (or his physician) relied on when they jointly decided to use the Denali Filter? Cole has offered no authority to help resolve this intuitive conflict. The one case Cole does cite, *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805 (E.D. Tex. 2008), actually weakens his position. In *Foster*, the district court *refused* to relax Rule 9(b)'s pleading standard because the information was not in the exclusive control of the defendant. *See id.* at 820 ("[Plaintiff] asserts that such information is 'in the exclusive possession and/or control of Defendant and/or the United States.' However, [plaintiff's] argument that this information is possessed by a party *other* than BMS is a tacit admission that this relaxed exception does not fit." (cleaned up)). This same logic applies here. If Bard flooded the market with fraudulent misrepresentations in a variety of media formats, as Cole alleges, Bard does not have exclusive control over the information, and Rule 9(b)'s pleading standard applies in full force. Because the Complaint does not allege what misrepresentations Bard made, when it made them, and where it made them, Cole's fraudulent misrepresentation claim fails and should be dismissed.

Cole's negligent misrepresentation claim is based on the same allegations as his fraudulent misrepresentation claim, so Rule 9(b) applies. *See Benchmark Elecs.*, 343 F.3d at 723; *Fearrington*, 410 F. Supp. 3d at 807. This claim fails for the same reasons his fraudulent misrepresentation claim fails, and it should be dismissed as well.

## D.  PUNITIVE DAMAGES

The State of Texas allows claimants to obtain exemplary damages "only if [they] prove[] by clear and convincing evidence that the harm . . . results from (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003(a). "Negligence and gross negligence are not separable causes of action, but are inextricably intertwined." *Tesoro Petroleum Co. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). To properly state a claim for punitive damages at the pleading stage, the plaintiff need only "allege facts indicating that 'the defendant knew about the peril, but his acts or omissions demonstrate that he did not care.'" *Cofresi*, 450 F. Supp. 3d at 768 (quoting *Louisiana—Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247 (Tex. 1999)).

Bard argues that Cole's claim for punitive damages should be dismissed because Cole's "Complaint does not include a claim for gross negligence." Dkt. 13 at 17. Bard's reply reiterates that "[e]vidence of ordinary negligence . . . do[es] not entitle a plaintiff to recovery of exemplary damages," and that Cole "fails to state a claim for punitive damages because he does not allege gross negligence." Dkt. 16 at 13. Bard is correct that it will not be liable for punitive damages if Cole fails to

prove that Bard was grossly negligent. But to the extent Bard believes Cole must expressly plead gross negligence to pursue punitive damages, it is wrong. *See Rodgers v. City of Lancaster Police*, No. 3:13-cv-2031-M-BH, 2017 WL 457084, at *17 (N.D. Tex. Jan. 6, 2017) ("In Texas, gross negligence is not a separate cause of action apart from negligence." (quotation omitted)).

Viewing the Complaint in the light most favorable to Cole, as I must on a motion to dismiss, it is clear that Cole may be able to show that Bard was grossly negligent. Cole has alleged an ordinary negligence claim that Bard has not challenged, and Cole alleges that Bard "had knowledge of, and [was] in possession of evidence demonstrating that, the Denali Filter was defective and unreasonably dangerous." Dkt. 1 at 49. Cole further alleges that Bard consciously disregarded the known risks associated with the Denali Filter, failed to warn consumers, failed to conduct post-market surveillance on the safety of their product, and ultimately failed to recall the Denali Filter. These facts are sufficient to give rise to an inference that Bard was grossly negligent in its continued sale of the Denali Filter. Whether discovery will support this claim, or whether a jury will find in Cole's favor is yet to be determined. At this early stage of the case, however, Cole has pled enough facts to put Bard on notice that Cole intends to make a showing of gross negligence for which he may recover punitive damages.

## RULE 12(e) MOTION FOR A MORE DEFINITE STATEMENT

In the event that I deny any part of the Motion to Dismiss, Bard requests that I order Cole to provide a more definite statement because the Complaint is

supposedly too vague for Bard to respond. Rule 12(e) entitles a party to a more a definite statement when a portion of a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Whether to grant a Rule 12(e) motion for a more definite statement is within the court's sound discretion. *See Crawford-El v. Britton*, 523 U.S. 574, 597–98(1998). A Rule 12(e) motion "is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." *Frazier v. Se. Pa. Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994). Based on my review, the live complaint is far from "an unintelligible pleading." Putting aside the claims addressed above, the Complaint's 51 pages provide a sufficient basis for Bard to decipher the conduct Cole challenges. To the extent Bard believes it needs more detail to fully understand the specific allegations lodged by Cole, the discovery process is the preferred avenue to easily obtain such information. I am not going to order Cole to replead. Bard's Rule 12(e) Motion should be denied.

## RULE 12(f) MOTION TO STRIKE

Near the end of its Motion to Dismiss, Bard contends that "[t]he Complaint contains immaterial and prejudicial allegations wholly unrelated to [Cole's] claims, that should be stricken" under Rule 12(f). Dkt. 13 at 18.

Rule 12(f) empowers a district court to strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The granting of a motion to strike lies within the sound discretion of the court. *See id.* Striking a pleading "is a drastic remedy to be

resorted to only when required for the purposes of justice . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (quotation omitted). *See also FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) ("Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.").

A motion to strike is not warranted here. Although Bard complains that the "Complaint is replete with lengthy allegations concerning other Bard IVC Filters (*i.e.*, the Recovery®, G2®, G2 Express®, Eclipse®, and Meridian®) that were manufactured and sold long before [Cole] was implanted with his Denali Filter," Dkt. 13 at 18, these are hardly "redundant, immaterial, impertinent, or scandalous matter[s]." FED. R. CIV. P. 12(f). These allegations are introduced in the Complaint to provide background and context for the lawsuit. I am hard-pressed to see how Bard is prejudiced by the inclusion of such contentions in the lawsuit. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1218 (3d ed. 2020) ("[U]nless the presence of evidentiary matters is prejudicial or confusing, the pleading or the objected to portions of it should not be ordered stricken."). Accordingly, Bard's Rule 12(f) motion should be denied.

## CONCLUSION

For the reasons explained above, I recommend that Bard's Motion to Dismiss (Dkt. 13) be **GRANTED** in part and **DENIED** in part. Specifically, Cole's

claims for strict products liability—design defect (Count 3), breach of express and implied warranty (Counts 5 and 6), and fraudulent and negligent misrepresentation (Counts 7 and 8) should be dismissed. Cole still has three causes of action left: negligence; strict products liability—failure to warn; and strict products liability—manufacturing defect. Given that Cole's negligence claim remains, and his Complaint contains enough facts to plausibly support a finding of gross negligence, Cole's request for punitive damages should survive Bard's Motion to Dismiss. Finally, Bard's effort to seek relief under Rules 12(e) and 12(f) should be rejected.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 11th day of February 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE